IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LINDA S. WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20CV661 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Linda S. Wilson ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on May 6, 2015, alleging a disability onset date of October 31, 2010 in both applications. (Tr. at 183, 395-407.)[2] Her

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #11].

applications were denied initially (Tr. at 110-43, 205-15) and upon reconsideration (Tr. at 144-79, 220-37). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 238-39.) On December 21, 2017, Plaintiff, along with her attorney, attended the subsequent hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 183.) Plaintiff amended her alleged disability onset date to February 25, 2015. (Tr. at 86, 37, 447.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 192-93.)

Plaintiff requested review of the ALJ's decision, and on February 8, 2019, the Appeals Council, noting two errors, remanded Plaintiff's claims. (Tr. at 201-03.) Accordingly, on December 30, 2019, Plaintiff appeared and testified at a new hearing, where, as before, she was represented by an attorney. (Tr. at 10.) Following this hearing, the ALJ again determined that Plaintiff was not disabled withing the meaning of the Act (Tr. at 25), and, on May 18, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

capacity ("RFC")." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 13.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

> Degenerative Disc Disease of the Lumbar Spine with Herniation; Obesity; Fractured Left Arm, Status Post Open Reduction Internal Fixation (ORIF); and Degenerative Joint Disease of the Hips and Hands[.]

(Tr. at 13.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 15-16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, non-exertional limitations:

> [Plaintiff] could perform only frequent climbing of ramps or stairs but never climb ladders, ropes, or scaffolds. [She] could frequently stoop, but only occasionally twist or bend at the waist. [Plaintiff] could occasionl[ly] reach overhead with her left (non-dominant) upper extremity. She should have not exposure to hazards such as unprotected heights or open machinery. [Plaintiff] would need the ability to alternate between sitting and standing hourly while remaining on task, meaning no more than two to three minutes per hour off task for the positional change.

(Tr. at 17.) At step four of the analysis, the ALJ found, based on the testimony of the vocational experts, that Plaintiff's RFC did not preclude her past relevant work as a customer service representative. (Tr. at 24-25.) The ALJ therefore concluded that Plaintiff was not disabled under the Act. (Tr. at 25.)

Plaintiff now contends that, at step three of the sequential analysis, the ALJ failed to properly consider whether her back impairment met or medically equaled 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04A (hereinafter Listing 1.04A). At step three of the sequential analysis, the ALJ considers whether any impairment meets or equals one or more of the impairments listed in Appendix I of the regulations. In analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination, particularly where the "medical record includes a fair amount of evidence" that

6

a claimant's impairment meets a disability listing. Bailey v. Colvin, No. 1:14CV303, 2015 WL 5227646, at *3 (M.D.N.C. Sept. 8, 2015) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). "Where such evidence exists but is rejected without discussion, 'insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" Id. (citations omitted); see also Brown v. Colvin, 639 F. App'x 921, 923 (4th Cir. 2016) (remanding where the "medical record [was] not so one-sided that one could clearly decide, without analysis, that [the listing in question was] not implicated")).

Here, in determining that Plaintiff's back impairment failed to meet the requirements of Listing 1.04A, the ALJ found as follows:

> I considered Listing 1.04 for disorders of the spine. In deciding whether a claimant's severe medically determinable disorder of the spine meet Listing 1.04A, I will not require that all of the medical criteria in paragraph A appear simultaneously or in particularly close proximity. Rather, I must engage in "a more free-form, contextual inquiry that makes twelve months the relevant metric for the assessment of the claimant's duration of disability" (Acquiescence Ruling (AR) 15-1(4), Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013)). I will decide whether the evidence shows that all of the medical criteria in paragraph A are present within a continuous twelve-month period (or, if there is less than twelve months of evidence in the record, that all the medical criteria are present and are expected to continue to the present). If all of the medical criteria are not present within a continuous twelve-month period, I shall determine that the disorder of the spine did not meet the listing. If all of the medical criteria in paragraph A are present within a continuous twelve-month period (or are expected to be present), I will then determine that the evidence shows, as a whole, that the claimant's disorder of the spine caused, or is expected to cause, nerve root compression continuously for at least twelve months. The nerve root compression must be severe enough, however, that I can fairly conclude that it is still characterized by all of the medical criteria in paragraph A (AR 15-1(4)). In this case, I have determined that all of the medical criteria are not present within a continuous twelve-month period; therefore, I have determined that the disorder the spine did not meet this listing. For example, [Plaintiff] maintained grossly normal muscle strength in her extremities, with normal reflexes and coordination (1F/13; 3F/4; 10F/6; 12F/35, 50; 13F/29). In addition, it was noted that [Plaintiff] had a normal gait with or without her assistive device (e.g., 12F/72, 106, 137, 139). As discussed above, [Plaintiff]

remained able to perform her personal care activities and light household tasks (e.g., 4E; 6F/4; 10F/4; Hearing Testimony).

(Tr. at 16.)

As the ALJ's analysis reflects, to meet Listing 1.04(A), a plaintiff must first show that she suffers from a spinal disorder, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. In addition, she must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord." Id. Finally, she must show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Id.[5]

In the present case, there is no question that Plaintiff's lumbar degenerative disc disease, identified as a severe impairment at step two of the sequential analysis, meets the first of the Listing's requirements. Regarding the second requirement, compromise of a nerve root

---

[5] The Court notes that the Listings have been amended effective April 2, 2021. Specifically, the SSA recodified Listing 1.04A as Listing 1.15. In doing so, the agency clarified its requirements for meeting a spinal disorder listing, in part by setting out additional criteria claimants must demonstrate to show disability at step three of the sequential analysis. See 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020); compare 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04(A), with 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.15 (effective April 2, 2021). The new listing applies to both new applications filed on or after April 2, 2021, as well as to claims that are pending with the SSA on or after that date. However, the Court must consider the present case based on the version of the regulations in effect at the time of the ALJ's decision, and any consideration of whether the new Listings could or should apply on remand would be for the ALJ to consider in the first instance. 85 Fed. Reg. 78164-01, n.2 ("[W]e will use these final rules on and after their effective date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

or the spinal cord, a November 2015 MRI revealed a left paracentral disc herniation at L4-L5 impinging on the L5 nerve root. (Tr. at 883.) Therefore, the remaining issue is whether Plaintiff presented evidence that her back condition met the paragraph A criteria of Listing 1.04 within a twelve-month span during her alleged disability period.

As set out above, the ALJ determined that Plaintiff had not met all of the required criteria. In explaining the basis for this finding, the ALJ stated that he had "determined that all of the medical criteria are not present within a continuous twelve-month period; therefore, I have determined that the disorder the spine did not meet this listing." The ALJ then provided only the following explanation: (1) Plaintiff "maintained grossly normal muscle strength in her extremities, with normal reflexes and coordination," (2) "had a normal gait with or without her assistive device," and (3) "remained able to perform her personal care activities and light household tasks." (Tr. at 16.) However, several of the factors expressly considered by the ALJ, including coordination loss, gait, and an inability to perform personal care activities or household tasks, are not, in fact, requirements for Listing 1.04(A).

The only rationale listed by the ALJ that is actually part of Listing 1.04(A) is his assertion that she "maintained grossly normal muscle strength in her extremities, with normal reflexes." However, as Plaintiff correctly notes, she displayed reduced strength and flexion on multiple occasions during the time period at issue. (Pl.'s Br. [Doc. #15] at 7-8 (citing Tr. at 951 (11/25/2015, lumbar range of motion limited to limited to 50% forward bending and 25% back bending with left buttock pain and left foot tingling; some reduced strength on left); Tr. at 1034 (7/16/1016, "flexion 50%, extension 50%, rotation 50%, side bending left 75% and right 100%," some reduced strength in left hip flexors secondary to pain); Tr. at 1044-45

9

(11/3/2016, "decreased range in lumbar spine and some weakness in legs"); Tr. at 1061 (12/2/2016, "Flexion of trunk 50%, side bending 75% and extension 50% . . . . Plaintiff appears very motivated to improve pain level and activity as tolerated although still limited by pain level and adls causing pain in lower back"); Tr. at 1084 (1/13/2017, improvement in range and strength, but continues to demonstrate some weakness in left lower extremity)).) Moreover, as Plaintiff also notes, "normal reflexes would not be dispositive of meeting Listing 1.04A, provided that the claimant can demonstrate sensory loss, as [Plaintiff] can." (Pl.'s Br. at 5, n.2); (see also Tr. at 569, 573, 610, 683, 950, 951, 955).

In addition, in the ALJ's subsequent analysis of the RFC, the ALJ specifically acknowledged that:

(1) Plaintiff suffered from a spinal disorder with compromise of a nerve root, specifically that Plaintiff's "2015 lumbar spice x-ray showed multi-level degenerative disc disease" and her "2015 lumbar spine magnetic resonance imaging (MRI) indicated left paracentral disc herniation at L4-L5 impinging upon the L5 nerve root" (Tr. at 18);[6]

(2) The record reflected neuro-anatomic distribution of pain, with a diagnosis of "left-sided sciatica" and "lower back pain, as well as radicular pain into her left lower extremity" with "numbness and tingling down her leg and into her left foot" (Tr. at 19);

(3) The record reflected limitation of motion of the spine, including that she had "a reduced range of motion in her lower back with pain, including with bending forward and backward," and even after physical therapy "continued to show difficulty with flexed movements, which also increased her pain and radicular symptoms" and she "exhibited continued reduced range of motion for forward bending, back bending, and left side bending, and bilateral rotation" (Tr. at 19);

(4) The record included evidence of muscle weakness with sensory loss, including physical therapy notes reflecting "pain, decreased range of motion, decreased strength, impaired balance, decreased flexibility, impaired functional mobility,

---

[6] Subsequent records reflect that due to the ruptured disc at L4-L5, Plaintiff would be referred to neurosurgery. (Tr. at 1086). However, due to her lack of insurance and inability to pay, she did not proceed with surgery.

10

> impaired sensation, and impaired activity tolerance" as well as records reflecting "numbness and tingling down her left leg and into her foot" due to her radiculopathy (Tr. at 19).

The ALJ did not reconcile these findings or otherwise explain how the actual requirements of Listing 1.04A were not met.

In the briefing, Defendant contends that the evidence cited by Plaintiff does not constitute "a fair amount of evidence" that Plaintiff could meet Listing 1.04(A), as contemplated by the Fourth Circuit's decision in Radford. 734 F.3d at 295. As Defendant recounts, the record in Radford "contained some examinations with no weakness, sensory loss, or limitation of motion," while "other physical examinations 'showed limited motion of the spine on at least four occasions, positive straight leg raises at least five times, and sensory or reflex loss on at least three occasions.'" (Def.'s Br. [Doc. #17] at 8 (citing 734 F.3d at 296).) "Under these circumstances, the court found that the 'depth and ambivalence of the medical record' prevented meaningful review of the ALJ's finding that criteria [for] Listing 1.04A [were] unmet." (Def.'s Br. at 8.)

Although Defendant contends that "the medical evidence here was starkly different than the evidence in Radford" (Def.'s Br. at 9), the record fails to support this assertion. In fact, Defendant acknowledges that Plaintiff "had a limited range of lumbar spine motion" on a number of occasions (Def.'s Br. at 10 (citing Tr. at 611, 951, 954, 995, 1034, 1044, 1084, 1126, 1131)), and that Plaintiff demonstrated normal muscle strength in her extremities at many, but not all, of her appointments (Def.'s Br. at 10-11). In fact, as noted above, the physical therapy records repeatedly reflect decreased strength, impaired sensation, and decreased range of motion (Tr. at 704, 737-38, 826, 950-51, 995-96, 1001, 1003, 1005, 1009, 1011, 1013, 1017, 1019, 1025, 1034, 1044, 1045, 1061) and further reflect that she could not

11

stand longer than five minutes due to numbness (Tr. at 982, 984). Indeed, the ALJ acknowledged and accepted this evidence in the record but did not analyze or reconcile it with respect to the requirements of Listing 1.04A.

Defendant further identifies two additional bases for deviating from Radford: (1) Plaintiff's alleged failure to demonstrate positive straight leg raise tests in both the sitting and supine positions, as required by Listing 1.04(A); and (2) Plaintiff's conservative treatment for her nerve root impingement. However, neither of these rationales were relied upon by the ALJ himself. As noted in Anderson v. Colvin, this Court's

> [r]eview of the ALJ's ruling is limited . . . by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."

Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)).

Moreover, even absent Chenery concerns, the evidence cited by the Commissioner would not alter the result in this case. Plaintiff's treatment notes recount positive straight leg raise tests on multiple occasions. (Tr. at 578-79, 611, 894, 952.) On all but one of these occasions, the records fail to indicate whether the positive result was obtained in the sitting or supine position or both. The remaining record notes that a "[s]traight leg test in the supine position was not possible because [Plaintiff] could not tolerate this position." (Tr. at 894.) However, in the seated position, the test was positive on the left. (Tr. at 894.) Plaintiff persuasively argues that these results suggest that Plaintiff's pain—the hallmark of a positive

12

straight leg result—was so great that the supine test could not even be attempted, suggesting the probability of a positive result. (Pl.'s Resp. Br. [Doc. #18] at 2.) Plaintiff further contends that, where treatment records fail to note whether a straight leg raise test was performed in the sitting or supine position, "court have held that absent indication to the contrary, performance of the test in both positions can be assumed within the standard of care." (Pl.'s Resp. Br. at 2-3) (citing Newkirk v. Berryhill, No. 7:15-cv-273-BO, 2017 WL 1102615, at *2 (E.D.N.C. Mar. 22, 2017) (further noting that, if the test results presented insufficient evidence to determine whether the plaintiff was disabled, "the ALJ was required to 'try to' resolve the insufficiency by (1) recontacting the treating physician, (2) requesting additional records, (3) requesting plaintiff undergo a consultative examination, or (4) asking plaintiff for more information." (citation omitted)); Stokes v. Berryhill, 294 F. Supp. 3d. 460, 465 (E.D.N.C. 2018)). In the circumstances, the Court concludes that the evidence regarding Plaintiff's straight leg raise tests was not so one-sided that these results could be ignored by the ALJ or used as a basis to discount Plaintiff's claim regarding Listing 1.04(A).[7]

Defendant's additional contention that Plaintiff's nerve root impingement was not severe enough to meet Listing 1.04(A) proves equally unpersuasive. A plain reading of the listing reveals that a claimant must simply show "compromise of a nerve root" to meet the listing's second requirement. 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. The severity

---

[7] The Court notes that in the ALJ's initial 2018 decision, the ALJ acknowledged that "primary care records document occasional positive straight leg raise on the left side and mildly diminished reflexes at the left patellar tendon." (Tr. at 189.) That initial decision was vacated by the Appeals Council on other issues, and on remand in the 2020 decision before the Court, the ALJ did not address the positive straight leg raise testing. As discussed above, this is not a record on which the Court could conclude that Listing 1.04A is not met for lack of positive straight leg raise testing, and it would be up to the ALJ to address those records in making the listing determination.

of the "compromise" is then evaluated using the factors set out in paragraph A. If "the adjudicator can fairly conclude that [the claimant's nerve root compression is] characterized by all of the medical criteria in paragraph A" within a 12-month period, the claimant has shown the requisite level of severity to meet Listing 1.04(A). Social Security Acquiescence Ruling (AR) 15-1(4), Radford v. Colvin: Standard for Meeting the Listing for Disorders of the Spine with Evidence of Nerve Root Compression, 80 FR 57418-02, at *57420, 2015 WL 5564523 (Sep. 23, 2015). Because there is no question here that Plaintiff's 2015 MRI demonstrates nerve root compromise, and the ALJ failed to properly evaluate the compromise using the medical criteria in paragraph A of the listing, this matter merits remand for further consideration in accordance with this Recommendation.

As part of the remand, the Court notes that Plaintiff raised an additional issue in a footnote of her briefing, regarding her use of a cane. Specifically, Plaintiff notes that in the ALJ's initial 2018 decision, "regarding the use of a hand-held assistive device, the ALJ found that [Plaintiff] required the use of an assistive for both ambulation and balance" but then found that she could nevertheless perform her past relevant work. (Pl.'s Br. at 5, n.3) (citing Tr. at 187, 192).[8] However, as Plaintiff further notes:

> the [Appeals Council thereafter] remanded this case noting that it was not clear whether [Plaintiff] could actually perform her past work because the vocational expert ("VE") testified that she would need to be able to balance by leaning at her workstation without her cane to perform her past work. [Tr. at 201.] Upon remand, the same ALJ asked the VE if [Plaintiff] could perform her past work

---

[8] In making this determination, the ALJ noted in that 2018 decision that Plaintiff used the cane "when she goes outside", that she "began using the cane in 2015," and that "it helps with balance and taking pressure off her back." (Tr. at 188.) The ALJ noted that Plaintiff sometimes had the cane at appointments but "that she ambulated without it at times as well." (Tr. at 189.) The ALJ then "provided an assistive device for ambulation and balance" in the RFC, and noted that "she requires the use of assistive device given the evidence of her occasional instability and trouble walking on uneven terrain as well as the consultative examination findings." (Tr. at 190.)

14

> with a hand-held device and the VE said that her past work would be precluded. [Tr. at 65.] Given her age, [Plaintiff] would have . . . been found disabled under the Medical Vocational Guidelines if she was limited to light and could not perform her past work. See 20 C.F.R. Part 404, Subpt. P, Appendix II.

(Pl.'s Br. at 5, n.3.)

With regard to the use of an assistive device, the ALJ in the present 2020 decision before the Court similarly noted that Plaintiff began using a cane in 2015 due to her issues with balance and her back and leg pain and numbness. (Tr. at 17, 20) The ALJ noted the evidence in the record regarding Plaintiff's use of the cane, including that she sometimes ambulated short distances without it and that "she was using her cane for safety more than anything." (Tr. at 21.) The ALJ further cited records reflecting that Plaintiff had a normal gait with or without her cane but that she would still need to use her cane outside to prevent falls (Tr. at 21 (citing Tr. at 1040).) The ALJ then concluded that "[f]or these reasons, the claimant would require the use of an assistive device in her residual functional capacity." (Tr. at 21 (emphasis added).) Thus, the ALJ considered the evidence and concluded that the use of an assistive device was required.[9] However, the ALJ did not include the use of an assistive device in the RFC, and it is not clear whether that was intentional or why the inconsistency exists between the ALJ's analysis and the actual RFC. Of course, as noted by Plaintiff, if the use of an assistive device is included in the RFC, Plaintiff's past work would be precluded, based on the testimony of the vocational expert (Tr. at 65). Therefore, in the circumstances, this issue would also require remand, so that the ALJ can clarify the apparent inconsistency

---

[9] The initial 2018 decision included a similar evaluation of the evidence and similar conclusion by the ALJ that use of an assistive device was required, as set out above. That initial 2018 decision was vacated and is not binding, but does reflect a similar analysis and conclusion by the same ALJ.

between the ALJ's conclusion that Plaintiff would require use of an assistive device (Tr. at 21) but then failure to include it in the RFC.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #16] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #14] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 22nd day of February, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
